Matter of Housh (2022 NY Slip Op 07408)

Matter of Housh

2022 NY Slip Op 07408

Decided on December 23, 2022

Appellate Division, Fourth Department

Per Curiam

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 23, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, NEMOYER, WINSLOW, AND MONTOUR, JJ. (Filed Dec. 23, 2022.) 

&em;

[*1]MATTER OF FRANK T. HOUSH, AN ATTORNEY, RESPONDENT. GRIEVANCE COMMITTEE OF THE EIGHTH JUDICIAL DISTRICT, PETITIONER.

OPINION AND ORDER
Order of suspension entered.
Per Curiam
Opinion: Respondent was admitted to the practice of law by this Court on February 14, 1994. During the time period relevant to this matter, respondent maintained offices for the practice of law in Buffalo and Rochester. The Grievance Committee has filed a petition and supplemental petition alleging against respondent a total of 10 charges of misconduct, including neglecting client matters, failing to keep clients reasonably informed about their matters, misappropriating client funds, engaging in conduct involving dishonesty or deceit, and failing to cooperate in the grievance investigation. Respondent denied material allegations of the petitions, and this Court appointed a referee to conduct a hearing. Prior to the hearing, however, the parties executed a stipulation resolving most of the factual issues underlying the charges. Accordingly, the hearing before the Referee primarily concerned circumstances surrounding the alleged misconduct that may be viewed as aggravating or mitigating factors. The Referee has filed a report containing findings of fact and an advisory determination sustaining the charges of misconduct. The Referee found in mitigation that respondent did not act with venal intent, but the Referee also found that respondent failed to establish his primary proffered factor in mitigation, which is that the misconduct was attributable to mental health issues experienced by respondent during the relevant time period. The Grievance Committee moves to confirm the report of the Referee, except that the Committee requests that the Court disregard the finding that respondent did not act with venal intent. Respondent cross-moves to disaffirm the report of the Referee, particularly with respect to the findings concerning aggravating and mitigating factors. On October 25, 2022, counsel to the parties appeared before this Court for oral argument of the motion and cross motion, at which time respondent was heard in mitigation.
With respect to charge one, the Referee found that, in July 2017, respondent agreed to represent a client on a contingency fee basis in a civil matter arising from an alleged sexual assault. The Referee found that respondent accepted from the client funds in the amount of $2,500 as a "cost retainer," which respondent's retainer agreement provided would be used for only costs and expenses related to the matter. The Referee found that respondent deposited the cost retainer funds into his law firm operating account, rather than an attorney trust account or other segregated account, and thereafter misappropriated at least a portion of the funds to his own use inasmuch as the balance in his operating account fell below the amount of cost retainer funds paid by the client. The Referee found that, in October 2017, respondent told the client that a civil complaint had been filed on behalf of the client, but respondent subsequently advised the client that a complaint had not been filed. The Referee found that the client thereafter made several requests for a refund of the cost retainer funds and, although respondent's retainer agreement provided that no legal fee would be payable if no recovery was obtained, respondent sent to the client a letter stating that the client owed respondent attorneys' fees in the amount of $6,232 based on an hourly rate of $250 per hour. Respondent's letter also indicated that the client's cost retainer funds had been applied to pay respondent's claim for legal fees and that the client owed to respondent additional funds in the amount of $3,732. The Referee found that respondent did not refund the cost retainer funds to the client until August 2019, almost two years after the client first requested the refund.
With respect to charge two, the Referee found that, in January 2016, respondent agreed to represent a client on a contingency fee basis in a civil matter arising from a workplace injury. The Referee found that, although respondent accepted from the client funds in the total amount of $2,500 as a cost retainer, respondent deposited the funds into his law firm operating account and thereafter misappropriated at least a portion of the funds to his own use inasmuch as the balance in the account fell below the amount of cost retainer funds paid by the client. The Referee also found that, from March 2017 through August 2018, respondent failed to respond to several inquiries from the client in a prompt manner or to consult with the client regarding the means by which her legal objectives would be accomplished. The Referee further found that, after the client filed a grievance complaint, respondent sent to the Grievance Committee in [*2]October 2018 a letter acknowledging that he had not provided a tangible benefit to the client and asserting that he had provided to the client a partial refund in the amount of $1,500. The Referee found that respondent thereafter failed to comply with requests from the Grievance Committee for proof that he had paid to the client a partial refund, and documents eventually produced to the Grievance Committee established that respondent did not provide any refund to the client until September 2019.
With respect to charge three, the Referee found that, in August 2015, respondent agreed to represent the client on a contingency fee basis in an employment dispute. The Referee found that the client subsequently expressed concern that respondent had failed to respond to several inquiries regarding the matter, but in mid- to late 2016 respondent contacted the client and advised her to pay funds in the amount of $1,500 so that respondent could file her case. The Referee found that, in October 2016, the client paid respondent funds in the amount of $1,500 by check containing the notation "filing fees," but respondent deposited the funds into his operating account and thereafter misappropriated at least a portion of the funds to his own use inasmuch as the balance in the account fell below the amount of filing fees paid by the client. The Referee also found that respondent failed to communicate adequately with the client, respond to her inquiries, or file any complaint or petition on her behalf. The Referee found that, although the client subsequently made several requests for a refund of her unused filing fees, respondent did not remit the funds to the client until September 2019.
With respect to charge four, the Referee found that, in February 2017, respondent accepted a retainer payment in the amount of $2,500 to represent a client whose child had been suspended from school for 35 days. The Referee found that, although the client's primary objective was to either overturn the suspension or have its term shortened, respondent failed to resume contact with the client until after the 35-day period of suspension had expired, at which time respondent advised the client that an additional retainer payment in the amount of $2,500 was needed to commence a lawsuit against the school district. The Referee found that the client paid the additional retainer funds requested by respondent and, although respondent commenced an article 78 proceeding on behalf of the client in June 2017, respondent's process server served the wrong party, after which the school district moved to dismiss on grounds including improper service and expiration of the applicable statute of limitations. The Referee found that, had respondent reviewed in a timely manner the affidavit of service prepared by the process server and recognized the error, respondent could have addressed the alleged defective service before the statute of limitations expired. The Referee further found that, in October 2017, respondent filed a motion to withdraw the article 78 petition, but the client during the subsequent grievance investigation asserted that respondent had advised her only that he was unable to move forward with the petition, that the client had not authorized withdrawal of the petition, and that the client first learned of the withdrawal in November 2017, after she consulted with a different lawyer. The Referee found that the client requested that respondent refund her retainer payment, but respondent offered to refund only half the retainer and stated that he intended to arrange for a law clerk to research the client's legal options. The Referee found that, in December 2017, the client retained a lawyer to assist her in obtaining a full refund of the retainer payment, and respondent issued the refund in January 2018.
With respect to charge five, the Referee found that, in March 2016, respondent accepted a retainer payment in the amount of $2,000 to assist a client in addressing alleged bullying experienced by the client's children at school. The Referee found that the client subsequently expressed concern that respondent had failed to respond to the client's numerous inquiries regarding the matter. The Referee also found that, in August 2016, respondent advised the client that an additional retainer payment in the amount of $5,000 was needed to commence an article 78 proceeding against the school district and, after the client paid the funds, respondent failed to respond to the client's requests for information regarding the matter and failed to commence the article 78 proceeding. The Referee found that, although respondent subsequently advised the client in October 2016 that he intended to file an article 78 petition in a matter of days, respondent shortly thereafter recommended that the client commence a civil action sounding in negligence, but he failed to respond to the client's subsequent requests that he explain why he had changed legal strategies. The Referee also found that, between May 2017 and May 2018, respondent led the client to believe that a complaint or petition had been filed on her behalf, but after respondent recommended in July 2018 that the client discontinue the matter, the client [*3]visited the county clerk's office and discovered that respondent had not filed any complaint or petition for her matter.
With respect to charge six, the Referee found that, in August 2018, respondent agreed to represent a client on a contingency fee basis in relation to a workplace dispute. The Referee found that, although respondent accepted from the client a cost retainer payment in the amount of $3,500, respondent deposited the funds into his operating account and thereafter misappropriated at least a portion of the funds to his own use inasmuch as the balance in the account fell below the amount of cost retainer funds paid by the client. The Referee found that, between January and April 2019, the client sent to respondent's law office several emails requesting an update on the matter and asserting that respondent had not contacted the client for several months. The Referee found that the client terminated the representation in April 2019 and advised respondent that she would be seeking to recover the funds she had paid to respondent. The Referee found, however, that as of August 2020 respondent had not refunded the cost retainer funds to the client.
With respect to charge seven, the Referee found that, in June 2016, respondent accepted a retainer payment in the amount of $2,700 to assist the parents of a child with special needs in obtaining educational support for their child. The Referee found that, from August 2016 through January 2017, respondent failed to take action on behalf of the clients or respond to the clients' inquiries regarding the matter, and the clients eventually obtained certain educational support for their child without any assistance from respondent. The Referee found that, in February 2017, respondent agreed to the clients' request for a refund of their retainer payment, but respondent thereafter failed to respond to their numerous requests regarding the status of the refund. The Referee found that respondent did not provide the refund to the clients until November 2018, which was after the clients commenced a fee arbitration proceeding against respondent.
With respect to charge eight, the Referee found that, during the grievance investigation, respondent failed to produce to the Grievance Committee various records pertaining to his attorney trust account, as repeatedly requested by the Committee. The Referee further found that, although respondent subsequently produced to the Grievance Committee certain records relating to his law firm operating account, respondent continued to fail to comply with requests that he produce his trust account records, which necessitated the issuance of subpoenas by this Court for production of the records.
The Referee's findings in relation to charge nine are based on findings set forth above concerning respondent's misappropriation of cost retainer funds and filing fees belonging to the clients whose matters gave rise to charges one, two, three, and six.
With respect to charge ten, the Referee found that, although respondent in July 2019 opened a bank account to use as an attorney trust account, he failed to label the account as an "attorney trust account," "attorney special account," or "attorney escrow account." The Referee also found that, in April 2020, respondent issued to a client a trust account check in the amount of $245 that resulted in a negative balance in the account and the issuance of a dishonored check notice by respondent's bank. The Referee found that, to address the shortfall, respondent transferred from his operating account to his trust account funds in the amount of $200. The Referee also found with respect to a different client matter, which respondent had accepted on a contingency fee basis, that respondent deposited into his trust account settlement funds in the amount of $325,000 and thereafter disbursed from the account for the matter funds in the total amount of $327,434, which included respondent's contingency fee and settlement funds disbursed to the client. The Referee noted that, during the hearing, respondent was unable to identify the source of the additional funds in the amount of $2,434 that were disbursed in relation to that client matter, other than to state that the discrepancy was caused by clerical error. The Referee further found that, in early June 2020, respondent fell victim to a fraudulent settlement check scheme whereby he accepted a purported settlement check in the amount of $137,800 and thereafter complied with the purported client's instruction to initiate a wire transfer of funds in the amount of $135,300 to a bank account that was in the name of a limited liability company, rather than the name of the purported client. The Referee found that respondent initiated the wire transfer without verifying that any of the purported settlement funds had been deposited into his attorney trust account and that, after respondent's bank determined that the settlement check was fraudulent, the bank assessed a charge-back for the amount of the fraudulent check. The Referee found that respondent subsequently sought to shield from attachment funds held in his trust account that belonged to another client by transferring trust account funds in the approximate [*4]amount of $216,000 to his operating account, which caused respondent's trust account to have a negative balance in the approximate amount of $137,000 and generated another insufficient funds notice. The Referee found that, in August 2020, the bank closed respondent's trust account inasmuch as it had been overdrawn since June 2020 and, at the time it was closed, had a negative balance in the approximate amount of $95,000.
Although respondent submits in mitigation that the alleged misconduct occurred while he was suffering from mental health issues, the Referee found that respondent failed to establish that the alleged misconduct was caused by mental health issues. The Referee, however, made an advisory finding that respondent did not act with venal intent. The Referee also made findings in aggravation of the alleged misconduct, including that respondent engaged in a pattern of failing to refund to clients in a timely manner unearned legal fees or unused cost retainer funds, that he made misrepresentations to a client or the Grievance Committee on certain occasions, and that some of the misconduct set forth in charge ten, which concerns respondent's trust account violations and mishandling of client funds, occurred after he advised the Grievance Committee during the grievance investigation that he had taken steps to prevent such misconduct.
We confirm the factual findings of the Referee and conclude that respondent has violated the following Rules of Professional Conduct (22 NYCRR 1200.0):
rule 1.3 (a)—failing to act with reasonable diligence and promptness in representing a client;
rule 1.3 (b)—neglecting a legal matter entrusted to him;
rule 1.4 (a) (2)—failing to reasonably consult with a client about the means by which the client's objectives are to be accomplished;
rule 1.4 (a) (3)—failing to keep a client reasonably informed about the status of a matter;
rule 1.4 (a) (4)—failing to comply in a prompt manner with a client's reasonable requests for information;
rule 1.4 (b)—failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation;
rule 1.15 (a)—misappropriating funds belonging to another person and commingling such funds with personal funds;
rule 1.15 (b) (1)—failing to maintain funds belonging to another person in a segregated account, separate from his business or personal accounts or any accounts of his law firm;
rule 1.15 (b) (2)—failing to identify his trust account as an "attorney special account," "attorney trust account," or "attorney escrow account" or to obtain checks and deposit slips that bear such title;
rule 1.15 (c) (4)—failing to pay or deliver to a client or another person, as requested by the client or other person, funds or other property in his possession that the client or other person is entitled to receive;
rule 1.15 (d) (1)—failing to maintain required bookkeeping and other records concerning transactions involving his attorney trust account and any other bank account concerning or affecting his practice of law;
rule 1.15 (i)—failing to make available to the Grievance Committee financial records required to be maintained and produced in response to a notice or subpoena issued in connection with a grievance complaint;
rule 1.16 (e)—failing to refund promptly any part of a fee paid in advance that has not been earned;
rule 8.4 (c)—engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;
rule 8.4 (d)—engaging in conduct that is prejudicial to the administration of justice; and
rule 8.4 (h)—engaging in conduct that adversely reflects on his fitness as a lawyer.
Although the Grievance Committee alleges that respondent has violated certain other provisions of the Rules of Professional Conduct, we decline to sustain those alleged rule violations inasmuch as they are not supported by the record or have been rendered superfluous by virtue of our determinations set forth herein.
We have considered, in determining an appropriate sanction, respondent's submissions in mitigation, which include numerous letters of support from individuals attesting to respondent's commitment to the practice of law and his good standing in the community, as well as respondent's statement that the misconduct occurred while he was suffering from mental health [*5]issues, for which he has sought treatment. We have also considered the Referee's findings in aggravation and mitigation of the misconduct, with which we generally agree. Indeed, although we commend respondent for seeking mental health treatment, we agree with the Referee that respondent failed to establish that the misconduct at issue in this case was caused by mental health issues. We disaffirm, however, the Referee's advisory finding that respondent did not act with venal intent inasmuch as the record establishes that respondent engaged in an extensive course of misconduct that resulted in harm or prejudice to several clients and that was, at times, deceitful and knowingly in favor of respondent's personal interests at the expense of the interests of his clients and his professional obligations as a lawyer. We further agree with the Referee's finding that, during respondent's hearing testimony, respondent often became evasive when questioned about circumstances surrounding the alleged misconduct and his own culpability for the misconduct, which in our view demonstrates respondent's lack of remorse or inability to acknowledge the extent of his wrongdoing. Accordingly, after consideration of all of the factors in this matter, we conclude that respondent should be suspended from the practice of law for a period of three years.